UNITED STATES DISTRICT COURT          <u>ELECTRONIC PUBLICATION ONLY</u>
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
SEYMOUR'S BOATYARD, INC.,                    :
                                             :
                              Plaintiff,     :
                                             :        MEMORANDUM
                                             :        <u>AND ORDER</u>
                   - against -               :
                                             :        08-CV-3248 (JG) (AKT)
THE TOWN OF HUNTINGTON,                       :
HAROLD V. ACKER, individually,               :
FRANK PETRONE individually,                   :
MARK CUTHBERTSON, individually,               :
SUSAN A. BERLAND, individually,               :
STUART P. BESEN, individually,                :
GLENDA A. JACKSON, individually,              :
MATTHEW E. CONEYS, individually,              :
and CONEYS MARINE CORP.,                      :
                                             :
                              Defendants.    :
------------------------------------------------------------- X

A P P E A R A N C E S:

        CAMPANELLI & ASSOCIATES, P.C.
                129 Front Street
                Mineola, NY 11501
        By:     Andrew J. Campanelli
                David A. Antwork
                Attorneys for Plaintiff

        CAHN & CAHN, LLP
                445 Broadhollow Road, Suite 332
                Melville, NY 11747
        By:     Richard C. Cahn
                Attorney for Defendants Matthew E. Coneys
                and Coneys Marine Corp.

        CULLEN & DYKMAN, LLP
                Garden City Center
                100 Quentin Roosevelt Boulevard
                Garden City, NY 11530-4850
        By:     James Patrick Clark
                Attorney for Defendants The Town of Huntington, Harold V. Acker,
                Frank Petrone, Mark Cuthbertson, Susan A. Berland,
                Stuart P. Besen and Glenda A. Jackson

JOHN GLEESON, United States District Judge:

Seymour's Boatyard, Inc. ("Seymour's") brings this action pursuant to 42 U.S.C. §§ 1983 and 1988, alleging violations of its constitutional rights (1) to due process and equal protection as guaranteed by the Fifth and Fourteenth Amendments, and (2) to petition the government for the redress of grievances under the First Amendment. Seymour's also alleges a claim pursuant to 42 U.S.C. § 1983 of conspiracy to violate its civil rights.[1] In addition, Seymour's asserts related state law claims for breach of contract, tortious interference with contract and promissory estoppel.

The case arises out of the March 2008 decision by the Town of Huntington (the "Town") to rescind the award of a license agreement to Seymour's for the operation of a mooring and launch service from one of the Town's beaches. This decision was allegedly based on an agreement "arranged behind closed doors" by defendant Matthew Coneys, owner of defendant Coneys Marine Corp. ("Coneys Marine"), which had operated the mooring and launch service at issue for the previous 13 years, and the defendant members of the Town Board.

In two separate motions, the defendants move to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted. For the reasons stated below the motions are granted on all federal claims. I decline to exercise supplemental jurisdiction over the state claims. Accordingly, the case is dismissed without prejudice to the renewal of those claims in state court.

BACKGROUND

---

[1]     Seymour's originally brought its conspiracy claim pursuant to 42 U.S.C. § 1985(3). However, in its opposition papers Seymour's noted that it intended to bring a § 1983 conspiracy claim but had cited the wrong statute in its complaint. It requested leave to amend the pleadings, which I grant herein.

The following facts are drawn from the plaintiff's complaint, filed August 11, 2008, and documents incorporated by reference in that complaint, and are assumed to be true for the purposes of this motion.

A.     *Seymour's Boatyard's Bid to Operate a Mooring and Launch Service at Gold Star Beach*

Seymour's is a New York corporation engaged in the business of providing marine-related services, such as mooring and tender services,[2] on Long Island. It is owned by Margaret and Dave Weber. The Town retains exclusive control over the placement of commercial moorings in its harbor. Pursuant to that authority, it issues permits for approximately 30 moorings near Gold Star Battalion Beach ("Gold Star Beach") and grants the license to operate a mooring and launch service at Gold Star Beach to third parties based on an open bidding process.[3] If granted the mooring and launch service license, a commercial business can place the moorings (which are placed and removed each year) and charge boaters service fees for transporting them back and forth from the Gold Star Beach dock and their boats moored at various locations in Huntington Harbor.

On November 6, 2007, Seymour's submitted a formal bid proposal to operate the mooring and tender service from the Town dock at Gold Star Beach for the 2008 boating season. It was the "winning bid," $1,000 higher than the one submitted by Coneys Marine, the only other bidder. On February 5, 2008, the Town passed Resolution 2008-106, awarding Seymour's the license to operate the mooring and tender service at Gold Star Beach. The language of the resolution stated that the Town Board approved the granting of a license agreement to Seymour's

<hr>

[2]     A "mooring" is a boat anchoring system, which consists of an anchoring material (placed at the bottom of a body of water) attached to a chain. The chain is then attached to a buoy, to which a boat may be secured. Compl. ¶ 49. A tender service is a boat service that ferries people from a dock to their moored boats in the harbor.

[3]     Coneys notes that "[i]t has always been the case that the 30 moorings placed in Town waters near Gold Star Battalion Beach are the only Town moorings that receive tender service from that location." Coneys Br. at 4. Of the approximately 155 moorings that the town allots to Coneys Marine each year, 125 are placed near the Coneys Marine business location on the harbor at 121 New York Avenue, Huntington. *Id.*

Boatyard to operate a mooring and launch service concession at Gold Star Beach, for an amount not to exceed the sum of $45,000, for a term commencing on April 5, 2008 and terminating on December 31, 2009, with two one-year options to renew, "upon such other terms and conditions as may be acceptable to the Town Attorney." Pl. Br., Ex. C.

In a letter dated February 8, 2008, the Town Director of Purchasing, Donna Rossetti, confirmed the award of the license. The letter advised Seymour's that "[t]he contract must be fully executed by the Town before any services can be ordered and/or work performed, therefore it is imperative that the contract be signed in a timely manner." Pl. Br., Ex. D (emphasis omitted). A subsequent letter on February 11, 2008 from the Town Clerk to Seymour's stated: "Enclosed for your files is a copy of the Huntington Town Board Resolution #2008-106 awarding a license agreement to Seymour's Boatyard, Inc. to operate a mooring and launch concession service at Gold Star Battalion Beach." Pl. Br., Ex. E.

B.      *Coneys Marine's Losing Bid and Coneys' Subsequent Actions*

Coneys Marine had operated the mooring and tender service for the previous 13 years, and had been the sole bidder for the contract during the period from 1993-2006. Its owner, Matthew E. Coneys, serves as a member of the Town's Harbors and Boating Advisory Council ("HBAC"). Among its duties and responsibilities, the HBAC provides recommendations to the Town with respect to regulation and placement of moorings within the Town's harbors. Compl. ¶ 54. Coneys was appointed to the HBAC by defendant Frank Petrone, the Town Supervisor, and the appointment was confirmed by defendant Town Board members Mark Cuthbertson, Susan A. Berland, Stuart P. Besen and Glenda A. Jackson.[4]

---

[4]      Throughout this opinion the defendants The Town of Huntington, Petrone, Acker, Cuthbertson, Berland, Besen and Jackson are referred to collectively as "the Town defendants."

After learning that his company had not submitted the winning bid, Coneys met with defendant Harold V. Acker, the Town's Director of Maritime Services, to avoid losing the financial benefits of the mooring and launch service contract Coneys Marine had enjoyed for the previous 13 years. Seymour's alleges that Coneys used his political connections to arrange "closed-door meetings" with Acker and members of the Town Board. Coneys then conspired with the Town Board members and Acker to cause the Town to rescind the license it had awarded to Seymour's and/or to divert the financial benefits of the contract to Coneys and Coneys Marine. In furtherance of this conspiracy, Seymour's alleges, Coneys Marine placed moorings within all of the mooring space available in the Town waters without having either applied for or obtained permits to do so, in violation of the Town Code. In addition, Coneys Marine mailed letters to its customers indicating that even though Seymour's had won the bid for the mooring and launch contract with the Town, Coneys Marine had received permission to place moorings on the Huntington side of Gold Star Beach and would "'definitely have [its] moorings in place and for rent at the Gold Star location.'" Compl. ¶ 81.[5]

On February 27, 2008, Seymour's owners, having learned that Coneys and Coneys Marine had "effectuated this *preemptive* placement of moorings in the Town's waters," Compl. ¶ 84, met with Assistant Town Supervisor Laurie Nolan and Town Attorneys Thelma Neri and John Leo to discuss the removal of the moorings placed by Coneys. Another purpose of the meeting was to discuss the cost of the mooring and tender service Seymour's was planning to provide in 2008, which Nolan believed was going to be higher than in years past. Seymour's explained its planned pricing scheme at this time. During the meeting, Nolan expressed surprise

---

[5]    In addition to the 30 moorings in Town waters near Gold Star Beach, in prior years Coneys Marine's tender service also serviced the moorings that the Village of Lloyd Harbor permitted Coneys Marine to place in its waters at Puppy's Cove, which is part of the greater Huntington Harbor. Seymour's has filed a related suit against the Village of Lloyd Harbor. *Seymour's Boat Yard, Inc. v. Incorporated Village of Lloyd Harbor, et al.*, No. 2008 CV 1097 (JG) (AKT).

that Coneys had placed moorings without a permit and directed him to remove them.  Coneys

then motioned to Acker and both men left the room for a private conversation.  After the

meeting, neither Acker nor any of the Town Board members took any action to remove Coneys

Marine's moorings or to force it to remove them.[6]

C.      *The Town Rescinds Its Award to Seymour's*

On March 18, 2008, the Town Board adopted Town Resolution 2008-185,

rescinding Resolution 2008-106, which had awarded the mooring and launch license agreement

to Seymour's.  Resolution 2008-185 stated that it had come to the attention of the Town Board

that "members of the boating community would, due to extenuating circumstances, be required

to pay an additional cost for mooring service, and the total combined cost of mooring and launch

service would substantially increase all to the detriment of the boaters."  Having made "every

effort to protect against a substantial fee increase and maintain the cost of such combined service

at a level enjoyed in previous years" and believing it to be in the best interests of the public, the

Town rescinded its award of the concession agreement to Seymour's and explained that it had

decided that the Town itself would operate the tender service in 2008.  Town Defs. Br., Ex. C.

As a result, the Town operated the tender service for the 2008 season and Coneys Marine

operated the mooring service, although Seymour's alleges that Coneys Marine in fact operated a

launch service as well, with the Town's permission.

D.      *The Instant Action*

Seymour's brings this action pursuant to 42 U.S.C. §§ 1983 and 1988 claiming

that the Town defendants conspired with Coneys and Coneys Marine (collectively, "Coney

---

[6]      I note that Exhibit O to Coneys' brief is a letter from Acker to Coneys dated February 26, 2008,
stating that the Town had learned Coneys Marine had placed 30 moorings on the north side of the channel in an area
in which it was not permitted to place moorings.  The letter gave notice to Coneys that if it did not remove its
moorings as required, the Town would remove them at Coneys' expense.  Coneys Br., Ex. O.

defendants") to rescind the award of the license to operate a launch and mooring service at Gold Star Beach, thereby violating, *inter alia*, its due process and equal protection rights. Seymour's seeks $4 million in compensatory damages (against all defendants) as well as $14 million in punitive damages (against all defendants except the Town) as well as expert and attorneys fees. In addition, Seymour's seeks injunctive relief prohibiting the defendants "from interfering further with plaintiffs [sic] efforts to secure any form of approvals or licenses associated with the plaintiffs [sic] desire to provide mooring or tender services within waters subject to the Towns [sic] jurisdiction." *See e.g.*, Compl. p. 66.

In their motion to dismiss, the Town defendants assert that the complaint fails to state an equal protection or due process claim, fails to allege facts to support a conspiracy claim, fails to state a First Amendment violation and fails to state a claim for breach of contract or for promissory estoppel. They also contend that the Town Board members enjoy absolute legislative immunity and that Acker is protected by qualified immunity. The Coneys defendants also contend that the complaint fails to state an equal protection or due process claim, fails to state a claim for conspiracy, fails to establish a First Amendment violation and fails to state a claim for tortious interference. They further contend that Coneys is protected by qualified immunity. I heard oral argument on the motions on February 13, 2009.

DISCUSSION

A.      *Standard of Review – Motion to Dismiss*

Motions to dismiss pursuant to Rule 12(b)(6) test the legal, not the factual, sufficiency of a complaint. *See, e.g.*, *Sims v. Artuz*, 230 F.3d 14, 20 (2d Cir. 2000) ("At the Rule 12(b)(6) stage, '[t]he issue is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims.'" (quoting *Chance v. Armstrong*,

143 F.3d 698, 701 (2d Cir. 1998))).  Accordingly, I must accept the factual allegations in the complaint as true, *Erickson v. Pardus*, 551 U.S. 89, ---, 127 S. Ct. 2197, 2200 (2007) (*per curiam*), and draw all reasonable inferences in favor of the plaintiff.  *Bolt Elec., Inc. v. City of New York*, 53 F.3d 465, 469 (2d Cir. 1995).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Ashcroft v. Iqbal* ("*Iqbal*"), 556 U.S. ---, 2009 WL 1361536, at *13 (May 18, 2009).

The plaintiff is not entitled to unlimited favorable inferences at the motion to dismiss stage.  The Supreme Court has held that the standard governing a complaint's legal sufficiency is in part one of "plausibility," *Twombly*, 550 U.S. at 560-63, no longer governed by the "no set of facts" admonition of *Conley v. Gibson*.  355 U.S. 41, 45-46 (1957) ("[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.").  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 2009 WL 1361536, at *12.

When considering a motion to dismiss, a court may examine (1) the factual allegations in the complaint, which are accepted as true; (2) documents attached to the complaint as exhibits or incorporated in it by reference; (3) matters of which judicial notice may be taken; and (4) documents either in the plaintiff's possession or of which the plaintiff had knowledge and relied on in bringing suit.  *Brass v. American Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993).

B.      *The Constitutional Claims*

Section 1983 creates a private right of action against "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ..., subjects, or causes to be subjected, any citizen ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws...." 42 U.S.C. § 1983.

1.    *Procedural Due Process Claims*

Seymour's alleges that it was denied its constitutional right to procedural due process when the Town Board rescinded the license agreement in March 2008.

The Fourteenth Amendment forbids states from depriving any person of property or liberty without due process of law. *See* U.S. Const. amend. XIV, § 1 ("[N]or shall any State deprive any person of life, liberty, or property, without due process of law...."). Procedural due process refers to the minimal requirements of notice and a hearing guaranteed by the Due Process Clause of the Fifth and Fourteenth Amendments when the deprivation of a significant life, liberty or property interest may occur.

To prevail on a procedural due process claim, a plaintiff first must identify a property or liberty interest that is entitled to due process protection. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538-39 (1985). Second, it must show that the State has deprived it of that interest. Third, a plaintiff must allege facts showing that the deprivation was effected without due process. *Mehta v. Surles*, 905 F.2d 595, 598 (2d Cir. 1990) (*per curiam*).

a.    *The Alleged Property Interest*

The Supreme Court has held that "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it." *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972). "'[He] must, instead, have a legitimate claim of entitlement to it' under state or federal law in order to state a §

1983 claim." *Finley v. Giacobbe*, 79 F.3d 1285, 1296 (2d Cir. 1996) (quoting *Roth*, 408 U.S. at

577). The Constitution does not create property interests that are subject to procedural due

process protection. Rather, "[p]rotectible property interests 'are created and their dimensions

defined by existing rules or understandings that stem from an independent source such as state

law.'" *Empire Transit Mix, Inc. v. Giuliani*, 37 F. Supp. 2d 331, 335 (S.D.N.Y. 1999) (quoting

*Roth*, 408 U.S. at 577). Thus, as the Court in *Roth* explained, "the welfare recipients in

*Goldberg v. Kelly*, …, had a claim of entitlement to welfare payments that was grounded in the

statute defining eligibility for them." *Roth*, 408 U.S. at 577.

Seymour's claims a property interest in the license it was awarded by the Town to

operate the launch and mooring service at Gold Star Beach. But it has cited to no state law

creating an entitlement to the benefits of a contract with a state. Also, even assuming that

Seymour's had an enforceable contract with the Town based on the award of the license, it

nonetheless fails to state a cognizable procedural due process claim because a contractual dispute

generally does not rise to the level of a protectible property interest. *See Walentas v. Lipper*, 862

F.2d 414, 418 (2d Cir. 1988).

The Second Circuit has acknowledged that "[a]n interest in enforcement of an

ordinary commercial contract with a state is qualitatively different from the interests the

Supreme Court has thus far viewed as 'property' entitled to procedural due process protection."

*S & D Maintenance Co. v. Goldin*, 844 F.2d 962, 966-67 (2d Cir. 1988) (noting that procedural

due process is generally appropriate in connection with the state's revocation of a status based

on, *e.g.*, entitlement to social security or welfare benefits, interest in tenured status in public

employment or permanent civil service employment). In determining when a contractual right

gives rise to a claim of entitlement and therefore a constitutionally protected property interest, the Second Circuit explained as follows:

> In one sense, of course, every enforceable contract right can be said to be an "entitlement."  As long as a state provides judicial remedies for the enforcement of contracts, either specific performance or damages for breach, every person holds a legitimate expectation that his contractually conferred rights are secure.  And whenever a person contracts with a state, breach by the state can be considered a denial of his entitlement to performance of the contract.  If the concept of "entitlement" were this expansive, federal courts could be asked to examine the procedural fairness of every action by a state alleged to be in breach of its contracts.

*Id.* at 966.  Accordingly, the Second Circuit declined to "to extend the doctrine further to constitutionalize contractual interests that are not associated with any cognizable status of the claimant beyond its temporary role as a governmental contractor."  *Id.* at 967; *see also Martz v. Inc. Vill. of Valley Stream*, 22 F.3d 26, 31 (2d Cir. 1994) (former town attorney's right to payment on a contract to draft a new town code did not rise to the level of a constitutionally protected property interest); *Redondo-Borges v. U.S. Dep't of Hous. and Urban Dev.*, 421 F.3d 1, 10 (1st Cir. 2005) ("We have held with a regularity bordering on the echolalic that a simple breach of contract does not amount to an unconstitutional deprivation of property.").

Moreover, "[w]here an administrative body maintains 'significant discretion over the continued conferral of that benefit, it will be the rare case that the recipient will be able to establish an entitlement to that benefit.'"  *Empire Transit Mix*, 37 F. Supp. 2d at 335-36 (quoting *Kelly Kare, Ltd. v. O'Rourke*, 930 F.2d 170, 175 (2d Cir.), *cert. denied*, 502 U.S. 907 (1991)); *see also Walentas*, 862 F.2d at 419 (despite fact that agreement specified developer's obligation in some detail, where city's initial designation of developer was conditional, developer was not entitled to maintain § 1983 action against city).

It is within the Town Board's discretion to rescind resolutions at any time.  *See*

Town Law § 93 ("Any act or resolution of a town board may be rescinded at any time by the

town board").  It is also within its discretion to decide not to award a contract to the winning

bidder.  *Cf. Transcontrol Corp. v. Metro. Transp. Auth.*, No. 82 Civ. 7504, 1987 WL 12090, *13

(S.D.N.Y. June 2, 1987) (holding that rules and regulations requiring Transportation Authority to

award contract to lowest responsible bidder contemplated exercise of discretion and thus did not

confer protected property interest on the low bidder).

Based on the foregoing, Seymour's possessed at most a "unilateral expectation"

of the benefit (the launch and mooring service contract), not an entitlement to it that would

trigger due process protection.  *Roth*, 408 U.S. at 577.  As is the case here, "where a breach of

contract does not give rise to a deprivation of a protectible property interest, plaintiff's exclusive

remedy 'lies in … breach of contract.'"  *Martz*, 22 F.3d at 31 (quoting *S & D Maintenance*, 844

F.2d at 968).

  b. *The Alleged Liberty Interest*

Seymour's argument that it was denied its liberty interest "to pursue its lawful

business and/or occupation free of arbitrary, discriminatory, [and] unreasonable … governmental

interference" as a result of the Town's alleged conduct is also misplaced.[7]  Compl. ¶ 172.  A

liberty interest is implicated "where an individual is terminated or deprived of some tangible,

legal status 'based on charges that might seriously damage his standing and associations in his

community' or that might impose 'on him a stigma or other disability that foreclose[s] his

freedom to take advantage of other employment opportunities.'"  *Malapanis v. Regan*, 340 F.

---

[7] Seymour's also alleges that it was denied procedural due process based on the Town's
licensing scheme, which deprived it of an opportunity to get permission to place moorings in the water.  At its core,
this allegation -- that the Town applied its licensing scheme to Seymour's in a manner that was different from how it
applied it to Coneys Marine -- is Seymour's equal protection claim, and it is therefore addressed below in note 8.

Supp. 2d 184, 193 (D. Conn. 2004), *aff'd* 147 Fed. App'x 219 (2d Cir. Oct. 25, 2005) (*summary order*) (quoting *S & D Maintenance*, 844 F.2d at 970) (alteration in original). Seymour's complaint lacks any suggestion that the plaintiff's "good name, reputation, honor, or integrity" is at stake. *Roth*, 408 U.S. at 573. Nor is there any allegation that a stigma has been placed on Seymour's. And the right to pursue one's profession not only fails to amount to a liberty interest, but Seymour's has not even alleged that other employment opportunities are foreclosed to it as a result of defendants' conduct. *See S & D Maintenance*, 844 F.2d at 970 ("[E]ven discharge from governmental employment will not by itself constitute a deprivation of liberty."); *Empire Transit Mix*, 37 F. Supp. 2d at 335-36 (City's decision to preclude plaintiff from supplying concrete to City projects did not deprive plaintiff of a liberty interest "even if a significant part of [plaintiff's] business had involved projects for the City").

I conclude that Seymour's is unable to satisfy the first element of a procedural due process claim as a matter of law because it lacks a property or liberty interest entitled to due process protection. Accordingly, I need not address whether the State is responsible for the deprivation or whether the deprivation occurred in the absence of due process. In light of the foregoing, plaintiff's procedural due process claims are dismissed.

2. *Equal Protection Claims*

Seymour's alleges that its right to equal protection under the law was violated by the Town defendants when they "repudiate[d] both the contract and license which the Town had awarded to [it]." Compl. ¶ 204.[8]

---

[8] In addition, Seymour's asserts that the Town applied its licensing scheme regarding the placement of moorings to Seymour's in a manner that was different from how it applied it to Coneys Marine. This claim is without merit. The Town Code requires that parties wishing to place a mooring in the Town's waters must first apply for a permit to do so. Compl. ¶ 220. Seymour's alleges that Coneys Marine was permitted to "fill all of the Towns [sic] waters, suitable for the placement of moorings" with such moorings without the proper permits in order to deprive Seymour's of the opportunity to apply for permits and that the Town acquiesced to Coneys Marine's actions, thereby treating the parties differently. *Id*. at ¶ 224. However, there are insufficient allegations to sustain

13

A state and its instrumentalities may not deny "any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. In essence, the mandate of the Equal Protection Clause is to prohibit the government from treating similarly situated persons differently. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985); *Brady v. Town of Colchester*, 863 F.2d 205, 216 (2d Cir. 1988).

To state a claim under the Equal Protection Clause, a plaintiff must allege that: (1) compared with others similarly situated, the plaintiff was selectively adversely treated; and (2) such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith or intent to injure a person. *See Miner v. Clinton County*, 541 F.3d 464, 474 (2d Cir. 2008); *Bizzarro v. Miranda*, 394 F.3d 82, 86 (2d Cir. 2005). Alternatively, instead of alleging that the selective treatment was based on an impermissible consideration, a plaintiff may establish that there was no rational basis for the selective treatment. *See Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (*per curiam*). Such a claim is commonly referred to as a "class of one" equal protection claim. *Id.*

Following the Supreme Court's recent decision in *Engquist v. Oregon Dep't of Agric.*, a plaintiff stating a "class of one" equal protection claim must allege: (1) that it was treated differently from others similarly situated in all relevant respects; (2) that defendants had no rational basis for the differential treatment, *see Olech*, 528 U.S. at 564; and (3) that the differential treatment resulted from a non-discretionary state action. *Engquist*, 553 U.S. ---, 128

---

the claim that the licensing scheme was applied differently to Seymour's than to Coneys Marine. Seymour's has not alleged that it ever placed moorings in the Town's waters without permission and was then directed to remove them for lack of a permit. Nor has Seymour's alleged that it was improperly denied a permit for a mooring; indeed, it never applied for one. Finally, though it is unnecessary to the resolution of this motion, as noted in note 6, *supra*, the Town apparently ordered Coneys Marine to remove improperly placed moorings when it learned of their existence.

S. Ct. 2146, 2154 (2008).  The Court declined to apply the "class of one" doctrine to the public

employment setting, reasoning that:

> There are some forms of state action, however, which by their nature involve
> discretionary decisionmaking based on a vast array of subjective, individualized
> assessments.  In such cases the rule that people should be "treated alike, under
> like circumstances and conditions" is not violated when one person is treated
> differently from others, because treating like individuals differently is an accepted
> consequence of the discretion granted.  In such situations, allowing a challenge
> based on the arbitrary singling out of a particular person would undermine the
> very discretion that such state officials are entrusted to exercise.

*Id.* at 2154.  Although the Court in *Engquist* noted that "[t]his principle applies most clearly in

the employment context," *id.*, numerous courts have applied *Engquist* to bar "class of one"

claims in connection with discretionary decisions made outside the government-employee

context.  *Crippen v. Town of Hempstead*, No. 07-CV-3478, 2009 WL 803117, at *6 (E.D.N.Y.

Mar. 25, 2009) (collecting cases); *see Douglas Asphalt Co. v. Qore, Inc.*, 541 F.3d 1269, 1274

(11th Cir. 2008) ("We have little trouble applying the reasoning in *Engquist*, directed at a[sic]

the government-employee relationship, to the circumstances in this case involving a government-

contractor relationship.  ...  Just as in the employee context, and in the absence of a restricting

contract or statute, decisions involving government contractors require broad discretion that may

rest 'on a wide array of factors that are difficult to articulate and quantify.'" (quoting *Engquist*,

128 S. Ct. at 2154)); *see, e.g.*, *Flowers v. City of Minneapolis*, 558 F.3d 794, 799-800 (8th Cir.

2009) (applying *Engquist*'s reasoning to conclude "that while a police officer's investigative

decisions remain subject to traditional class-based equal protection analysis, they may not be

attacked in a class-of-one equal protection claim"); *United States v. Moore*, 543 F.3d 891, 901

(7th Cir. 2008) (applying *Engquist* to challenges to decisions of prosecutorial discretion and

noting "a class-of-one equal protection challenge, at least where premised solely on

arbitrariness/irrationality, is just as much a 'poor fit' in the prosecutorial discretion context as in

the public employment context"); *Adams v. Meloy*, 287 Fed. App'x 531, 534 (7th Cir. 2008) (citing *Engquist* and determining that "class of one" claim against parole board had no merit because, *inter alia*, "[t]he parole board's inherent discretion necessitates that some prisoners will receive more favorable treatment than others"); *Tarantino v. City of Hornell*, No. 05-CV-6587, 2009 WL 1384983, at *11 & n.11, (W.D.N.Y. May 28, 2009) (applying Engquist to enforcement of town code provisions because of the degree of discretion involved); *Bissessur v. Indiana Univ. Bd. of Trustees*, No. 1:07-CV-1290, 2008 WL 4274451, at *9 (S.D. Ind. Sept. 10, 2008) (applying *Engquist* to "class of one" claim challenging the school's decision to expel plaintiff); *Siao-Pao v. Connolly*, 564 F. Supp. 2d 232, 245 (S.D.N.Y. 2008) (applying *Engquist* to parole board determination context and finding that a parole board's decision to deny parole was based on the subjective and individualized nature of the decision); *accord Vassallo v. Lando*, 591 F. Supp. 2d 172, 188-89 (E.D.N.Y. 2008); *Analytical Diagnostic Labs., Inc. v. Kusel*, No. 07 Civ. 3908, 2008 WL 4222042, at *4 (E.D.N.Y. Sept. 15, 2008); *but see Franks v. Rubitschun*, No. 07-1181, 2009 WL 440364, at *2 n.3 (6th Cir. Feb. 23, 2009) (noting that *Engquist*'s holding was specifically limited to the public-employment context).

Having failed to allege that the treatment it complains of was based on invidious discrimination, Seymour's equal protection claim cannot proceed to the extent it is based on its membership in some group. As a "class of one" claim, Seymour's fares no better. Applying the reasoning in *Engquist* to this case, I conclude that the equal protection "class of one" claim is not cognizable in the government-contractor context where, as here, the challenged decision was a discretionary one. This case does not implicate conduct by the Town as regulator or lawmaker. Rather, it involves the Town's provision of a service to its residents -- a means of parking their boats in Huntington Harbor and of getting from the dock to the boats -- and its dealings with

contractors to provide that service. As such, it falls clearly on the proprietary side of the "crucial" divide between the government "bring[ing] its sovereign power to bear on citizens at large" and the government as proprietor. *Engquist*, 128 S. Ct. at 2151.

No contract or statute restricted the Town's decision in this case. The Town's resolution rescinding the award to Seymour's is unlike the regulation in *Olech*, which conditioned the connection of the plaintiffs' property to the municipal water supply upon the grant of a 33-foot easement, while the Village required only a 15-foot easement from other similarly situated property owners. *Olech*, 528 U.S. at 563. As noted by *Engquist*, in *Olech* there was "a clear standard against which departures, even for a single plaintiff, could be readily assessed." *Engquist*, 128 S. Ct. at 2153. Such is not the case here. As noted above, the Town had the authority to rescind resolutions at any time, *see* Town Law § 93, which enabled the Board to make assessments about the commercial impact of particular contracts and to act in the best interest of the Town and its residents.

The terms of the challenged resolution place in clear relief the need to cabin "class of one" equal protection claims and to declare this case outside the cabin. As the fulcrum of Seymour's claim, and as a document in its possession, of which it had knowledge and on which it relied on bringing this case, Resolution 2008-185 may properly be considered on this motion to dismiss. *Brass*, 987 F.2d at 150 (when considering a motion to dismiss, a court may examine, *inter alia*, documents either in the plaintiff's possession or of which the plaintiff had knowledge and relied on in bringing suit). In it, the Town Board explained what Seymour's claims here is an irrational decision: the award to Seymour's was rescinded, according to the Town, because "the total combined cost of mooring and launch service would substantially increase all to the detriment of the boaters," and despite having made "every effort to protect

17

against a substantial fee increase," the Town Board believed it to be in the best interests of the public to rescind the award. Town Defs. Br., Ex. C. Seymour's of course contends otherwise, alleging that the Town defendants, presumably for political reasons, just wanted to steer the business to Coneys Marine.[9] But it cannot be the case that a disappointed bidder for a government contract can assert a viable equal protection claim simply by challenging the government's professed reasons for rejecting its bid as false and irrational. "Class of one" claims guard against the arbitrary classification of persons subject to legislation or regulation, ensuring that such governmental functions are administered "without respect to persons." *Engquist*, 128 S. Ct. at 2153 (internal quotation marks omitted). But when the government acts in its proprietary capacity, "treating like individuals differently is an accepted consequence of the discretion granted. In such situations, allowing a challenge based on the arbitrary singling out of a particular person would undermine the very discretion that such state officials are entrusted to exercise." *Id.* at 2154.

Because Seymour's fails state a cognizable "class of one" equal protection claim, the defendants' motions to dismiss this claim are granted.

3. *Substantive Due Process Claims*

Seymour's also alleges that it was deprived of its substantive due process rights. This argument is entirely meritless.

Rights are protected by substantive due process only if they are "fundamental," (*i.e.*, "objectively, deeply rooted in this Nation's history and tradition") and it is essential that a court begin with a "'careful description'" of the asserted fundamental right. *Washington v.*

---

[9]     Though I need not base my decision on it, I note that even the reason suggested by Seymour's for the Town's rescission of the award is hardly irrational. Seymour's obviously believes that elected officials meeting behind closed doors to arrange political favors for well-connected constituents to be "egregious and grossly underhanded," Compl. ¶ 106, but such actions are neither unusual nor lacking in a rational basis.

*Glucksberg*, 521 U.S. 702, 720-21 (1997) (quoting *Reno v. Flores*, 507 U.S. 292, 302 (1993)).[10]

Here it is difficult to discern from the complaint the "fundamental" rights Seymour's claims to possess. To the extent it is asserting a "property and liberty right," its claim fails for the reasons discussed above.

"Substantive due process protects only those interests that are 'implicit in the concept of ordered liberty.'" *Local 342, Long Island Pub. Serv. Employees v. Town Bd. of Huntington*, 31 F.3d 1191, 1196 (2d Cir. 1994) (quoting *Palko v. Connecticut*, 302 U.S. 319, 325 (1937)). "[W]here the alleged right … cannot be considered so rooted in the traditions and conscience of our people as to be ranked as fundamental, notions of substantive due process will not apply." *Local 342*, 31 F.3d at 1196 (citing *Flores*, 507 U.S. at 303) (internal quotation marks omitted). In addition, the dictates of judicial restraint demand that courts exercise "the utmost care" when requested to define or develop rights in this area. *Local 342*, 31 F.3d at 1196 (internal quotation marks omitted).

The Second Circuit has held that "[w]e do not think … that simple, state-law contractual rights, without more, are worthy of substantive due process protection. Such rights are not the type of 'important interests that have heretofore been accorded the protection of substantive due process.'" *Local 342*, 31 F.3d at 1196 (quoting *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 230 (1985) (Powell, J., concurring)); *see also Harrah Indep. Sch. Dist. v. Martin*, 440 U.S. 194, 198 (1979) (collecting cases discussing traditional interests protected by substantive due process, such as procreation, marriage and family life). *Cf. Ewing*, 474 U.S. at 229 (Powell, J., concurring) ("Even if one assumes the existence of a property right, ... not every such right is entitled to the protection of substantive due process. While property interests are

---

[10]      Fundamental rights are often referred to as "fundamental liberty interests," *e.g.*, *Glucksberg*, 521 U.S. at 721 (internal quotation marks omitted), but I refer to them here as "fundamental rights" to avoid confusion with my use of the term "liberty interests" in the procedural due process analysis.

protected by procedural due process even though the interest is derived from state law rather than the Constitution, substantive due process rights are created only by the Constitution.") (citation omitted).

Property interests that have been considered to be protectible by substantive due process arise in the context of landowners and their rights to use their land.[11]  This case does not concern land-use; Seymour's is not challenging the right to a benefit derived from real property. Rather, it is alleging a property interest in a contract, which, as discussed above, does not amount to federally protectible interest warranting constitutional protection.  Because Seymour's substantive due process allegations are insufficient as a matter of law, they are dismissed.

4.      *First Amendment Claims – Right to Petition the Government*

Seymour's asserts a claim under the First Amendment, alleging that the defendants' actions have deprived it of the right to petition the government for the redress of grievances.  The argument appears to be as follows: (1) to restrict the placement of moorings in Huntington Harbor, the Town has a licensing scheme; (2) that licensing scheme bars the placement of moorings in Town waters without a permit from the Town to do so; (3) Coneys Marine was permitted to place moorings without first securing the requisite permits; (4) Coneys Marine's "illegal" moorings took up all suitable places for moorings; (5) the Town's acquiescence in Coneys Marine's actions evinces a desire that no party other than Coneys Marine -- including Seymour's -- be permitted to have moorings in the Town; and (6) due to the lack of available mooring spaces (because Coneys Marine has them all) Seymour's has been

---

[11]      In a substantive due process land-use case, the plaintiff is required to allege: (1) that it had a valid property interest in the granting of the land-use permit; and (2) that the defendants infringed that interest in an arbitrary or irrational manner.  *See Clubside, Inc. v. Valentin*, 468 F.3d 144, 152 (2d Cir. 2006); *see also Natale v. Town of Ridgefield*, 170 F.3d 258, 263 (2d Cir. 1999) ("Substantive due process is an outer limit on the legitimacy of governmental action.  It does not forbid governmental actions that might fairly be deemed arbitrary or capricious and for that reason correctable in a state court lawsuit seeking review of administrative action.  Substantive due process standards are violated only by conduct that is so outrageously arbitrary as to constitute a gross abuse of governmental authority.").

effectively deprived of a governmental process through which it may seek redress of its grievances. Compl. ¶¶ 248-260. Although multiple aspects of Seymour's theory are unclear, foremost among them is how the Town has deprived Seymour's of "any meaningful opportunity, whatsoever, to apply for such a permit or permission," Compl. ¶¶ 254 & 260; the complaint fails to allege that Seymour's even applied for, let alone was denied, such a permit.

Seymour's argues that its "right to apply for a permit seeking permission to place moorings within the Town waters, constitutes a petition seeking the redress of a grievance." Pl. Br. 37. First, the *right* to apply for a permit plainly does not constitute a *petition* seeking the redress of grievances. Second, to the extent Seymour's intends to argue that an application for such a permit constitutes protected speech under the First Amendment, it may be correct.[12] However, Seymour's never made such an application. Thus, no First Amendment protection is due.

It is well-established that the "rights to complain to public officials and to seek administrative and judicial relief from their actions are protected by the First Amendment." *Dougherty v. Town of North Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 91 (2d Cir. 2002); *see also United Mine Workers v. Illinois State Bar Ass'n.*, 389 U.S. 217, 222 (1967) (right to petition government for a redress or grievances is "among the most precious of the liberties safeguarded by the Bill of Rights" and is "intimately connected ... with the other First Amendment rights of free speech and free press"). However, the facts alleged here plainly do

---

[12]    Plaintiff's reliance on *Hampton Bays Connections, Inc. v. Duffy* to support its position is misplaced. 127 F. Supp. 2d 364 (E.D.N.Y. 2001). That case concerned a First Amendment retaliation claim. The plaintiffs alleged that their permit applications to build a surgery center were denied in retaliation for having previously applied to a planning board for a special exception use permit and site approval to build a McDonald's restaurant. The Court found that the application concerning the McDonald's project was protected by the First Amendment and thus was the basis for finding that the first prong of a First Amendment retaliation claim had been met. *Id*. at 372-75.

not give rise to any cognizable claim under the First Amendment for denial of the right to petition the government for redress of grievances.  Thus, this claim is dismissed.

5.  *Conspiracy Claims*

Seymour's alleges that the defendants conspired to deprive it of its constitutional rights to due process and equal protection in violation of 42 U.S.C. § 1985(3).  In its opposition papers, Seymour's acknowledged that it cited the wrong statute and requested that its pleadings be amended to reflect § 1983 as the statute under which it intended to bring its civil conspiracy claim.  Plaintiff's request to amend is granted, but the conspiracy claim is dismissed.

To survive a motion to dismiss, a § 1983 conspiracy claim must allege: (1) an agreement between two or more state actors or a state actor and a private party, (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages.  *See Ciambriello v. County of Nassau*, 292 F.3d 307, 324-25 (2d Cir. 2002).

Vague and conclusory allegations that defendants have engaged in a conspiracy must be dismissed.  *Ciambriello*, 292 F.3d at 325; *Walker v. Jastremski*, 430 F.3d 560, 564 n.5 (2d Cir. 2005) ("[C]onclusory or general allegations are insufficient to state a claim for conspiracy under § 1983").  Moreover, it is well-settled that although "[a] plaintiff is not required to list the place and date of defendants['] meetings and the summary of their conversations when [it] pleads conspiracy, … the pleadings must present facts tending to show agreement and concerted action."  *McIntyre v. Longwood Cent. Sch. Dist.*, No. 07-CV-1337, 2008 WL 850263, at *11 (E.D.N.Y. Mar. 27, 2008) (internal quotation marks and citations omitted).

Where a plaintiff, as is the case here, has failed to demonstrate that it suffered any constitutional injury, its § 1983 conspiracy claim must also fail.  *Young v. County of Fulton*, 160

F.3d 899, 904 (2d Cir. 1998) ("There was no deprivation of a federal constitutional right, and therefore there can be no civil rights conspiracy to deprive that right."); *Singer v. Fulton County Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995) ("[T]he [conspiracy] lawsuit will stand only insofar as the plaintiff can prove the *sine qua non* of a § 1983 action: the violation of a federal right."). Accordingly, plaintiff's § 1983 conspiracy claim is dismissed.

C.      *The State Law Claims*

        Having dismissed all of the plaintiff's federal claims,[13] I conclude that retaining jurisdiction over the state law claims is unwarranted.  28 U.S.C. § 1367(c)(3); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("[I]f the federal claims are dismissed before trial, …, the state claims should be dismissed as well."); *see also Marcus v. AT&T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998).  "In the interest of comity, the Second Circuit instructs that 'absent exceptional circumstances,' where federal claims can be disposed of pursuant to Rule 12(b)(6) or summary judgment grounds, courts should 'abstain from exercising pendent jurisdiction.'" *Birch v. Pioneer Credit Recovery, Inc.*, No. 06-CV-6497, 2007 WL 1703914, at *5 (W.D.N.Y. June 8, 2007) (quoting *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 53 (2d Cir.), *cert. denied*, 476 U.S. 1159 (1986).  Accordingly, pursuant to 28 U.S.C. § 1367(c)(3), I decline to retain jurisdiction over the remaining state law claims and dismiss them without prejudice.

---

[13]        In light of the dismissal of all of the federal claims, I need not decide the individual Town Board defendants' contention that they are entitled to absolute legislative immunity nor Ackers' and Coneys' argument that each is entitled to qualified immunity.

## CONCLUSION

For the reasons stated above defendants' motions to dismiss are granted and the

Clerk is respectfully directed to close the case.

So ordered.


John Gleeson, U.S.D.J.

Dated: June 1, 2009
      Brooklyn, New York